The case of Gordon v. Lizarraga is next and Mr. Thompson will you please proceed. Thank you your honor. May it please the court I represent petitioner appellant Angie Gordon in this matter and before I begin I wanted to thank the panel and the court staff for giving up their holiday today to making sure that this case got argued and that it moved forward. I really on behalf of Ms. Gordon really appreciate that that fact. Given the court's focus of questions that it wanted to have considered today I've narrowed my argument down to those points. The video interview of Jane Doe one should have been disclosed by the prosecution to the defense and trial counsel was ineffective in not acquiring it. The police report that summarizes that video interview is approximately five paragraphs in length. The video recording although not all of the questions and answers but still you can hear Jane Doe one speaking to others in the background at the end of it is 45 minutes in length. There is not a way in which the police officer could have possibly got all the information that was in the interview and presented it in the report. Counsel let me ask you this. I take your point that Gordon was trying to show that this was a consensual intercourse but and that the Ms. Kelsey stated so in the video but if you look at the statements that she made when counsel cross-examined her about inconsistent statements about the timeline of the rape and I'm looking at ER 1265 and 1273 that seems to me to be almost exactly the same scenario that played out in the portion of the video interview that you have focused on. Why isn't that cumulative? How can you show that there was prejudice under the circumstances by a failure to disclose the video? So I think that there there are a number of ways in which that plays out. One the statements themselves that are in the interview are that her first statement is that the sex lasted five minutes then I told him we had to stop. That precise statement is not presented to the trial court during the later on the answer of five minutes is given to the question and when you yelled at him to get off of you how long had you been having sex and that's an excerpt 58 10 minutes in and 11 minutes in. But on redirect the prosecutor asked her if she told him in Gordon she didn't want to have sex prior to intercourse and she said yes and there's other quotations in here he would she was asked how long it was she said she didn't know. There was certainly a lot of discussion before the jury and the presentation and closing about how Ms. Kelsey was shall I say truth challenged. She kept varying going back and forth back and forth each side pointed this out and I guess the question I deal with is even if you satisfy the first two prongs of Brady I'm struggling with how Mr. Gordon or Ms. Gordon was prejudiced by the withholding of the video because all of what was said including that critical first part we talked about how long before she objected was contradicted by other direct statements that she made and indeed this is a lot in the record in terms of her testimony or a Kelsey's testimony that shows that there wasn't anything that can be relied upon and if the prosecution had played the entire tape that's highly prejudicial to your client so how on balance are you prejudiced how's your tape several times obviously before filing petition and then in getting prepared for today and I as a trial lawyer and that's what I do as well as appellate stuff I would have had no problem introducing that tape and would have in fact introduced that counsel let me let me ask you because I because I've got I let me ask you what you would have done with this as a trial lawyer so what you're referring to is that ten minutes and four seconds into the version we have at least as the court it said that the detective asked Kelsey said how long did sex last and Kelsey responded five minutes and I told him to stop I think you said that she said five minutes and then I told him to stop but I don't think that's correct I think she actually said five minutes and I told him to stop so then at 1027 so only 20 ish seconds later the detective asked because obviously the detectives wondering what and said when intercourse began or you know when a very descriptive thing happened explains it when that all began did you tell him anything at that point and Kelsey responded I told him to stop and as I recall because I watch this video too you know it's a very as you may recall it's a very slow interview right because she's obviously you know not doing great and and so 20 seconds later I mean that's basically back to back I mean the detective asked a question got an ambiguous answer I think and then when asked a follow-up question in the interview she specifically said she told him to stop and then one minute later which again isn't that long because you know if you watch this video you sit there waiting a long time between questions you know it's it says when you yell at him to get off how long did you add sex and then Kelsey said five minutes so you know the detective says says for those five minutes were you consensual to the sex and Kelsey says no I didn't want it at all and then the detective said so five minutes in you told him to get off and and then Kelsey repeated no I was yelling the whole time he didn't get off the whole time so let me ask you what would you have done with that I mean you would have tried to introduce those I understand those those little statements not in context help you but I the prosecution would have shown the whole video well the testimony that she provided was damaging in and of itself so what you were looking for was stuff that you could use to impeach and the court when I made the statement about her answer of five minutes to the question and when you yelled at him to get off of you how long had you been having sex they came at 11 minutes and 15 seconds in so it was after the ten minute in five or ten in four seconds it's a minute and a half later but I mean when I look at that video I mean it's very slow interview yes it is but the the two points about the about it first when she talks about it as we had sex for five minutes and then I told him to get off and then we had sex for five minutes before I said stop so my clerk wrote five minutes and I told him to stop and you're saying five minutes and then I told him to stop that seems to make a little bit of a difference is the then in there or not I don't have the excerpt with me but I will look when I'm sitting down to get the exact quote I haven't written out like that so I'm going to say yes but I have a statement the sex lasted five minutes then I told him we had to stop but at the end of the day it seems like judge van Dyck and I are both struggling with the same issue you've got testimony that from miss Kelsey's own lips is completely inconsistent both within the tape and outside the tape so as you know if evidence is cumulative it's very difficult to show that it's prejudicial even under Brady how do you overcome that problem so going back to that question in your earlier question the special recording was prejudicial because the court had concern about JD one's credibility from the beginning the court said do I think mr. Lernhart the trial counsel Kelsey is capable of lying as lied in the past sure I do and that's an excerpt 72 1083 the court then said would I necessarily have come to that witness and there was nothing else happening I doubt it so the fact that the court had questions about her credibility anything that would have added to the that lack of credibility would not have been cumulative but would have been more evidence additional evidence to make the determination that she was not credible and that the sex was consensual not forced as she had I think one other thing you ought to deal with in terms of what the court said the court was clear that he didn't think that the result would have changed if the if the tape had been in based upon the evidence that the court didn't think that any change would have occurred and as you know that's the standard particularly under EDPA you've got to show that the result would have been different and that's what I struggle with I'd really and you're quoting Kyle here it says you gotta have evidence that undermine confidence in the outcome of the trial and the judge from my reading was saying this wouldn't have changed anything how do you overcome that the state court was unreasonable in denying the Brady claim the court found that consent mistaken consent was thoroughly explored by the defense and was raised as defense and therefore the court had awareness and ability to evaluate that issue okay that's what the court said but really in truth counsel was not able to thoroughly explore the consent because he was not aware of JD one statements about kissing Gordon at the beginning and that he she was kissing him on the lips and that they were been French kiss so that was not part of him he was not aware of JD one statements that she said nothing to Gordon when he took her clothes off which is in the interview but not in the police report he was not aware of JD one statements that the sex went on for five minutes before she objected that wasn't in the trial testimony that wasn't in the report but wait a minute what about what both judge Van Dyke and I have said that indeed it was in other it wasn't brought out that she had told the officer that on the night of the of the of the event that that in fact it had been consensual for that five minute time period I'm not aware of her testifying as to that I guess what I'm struggling with is that at various points in the trial it seems to me that evidence came in that at one point she told him from the beginning that she did not want sex other points she said she didn't say anything so you've got contradictory evidence here the tape confirms that and so the question is why is this not cumulative if there were a black-and-white issue where it was very clear that only in the tape was there exculpatory evidence I then I would get your point about the Brady prejudice but it seems like there is significant other evidence that says just the opposite that she provided in other parts of the trial isn't that correct well I am not aware that she provided that evidence in other parts of the trial it was her testimony that counsel cross-examined in that well I thought I just read this to you but I'll do it again the indeed I don't know I thought it could have been you were you the trial counsel no I was not okay you're a good lawyer so I imagine you wouldn't have done this anyway the apparently in the cross-examination by Gordon's counsel about inconsistent statements about the timeline of the rape at one point in the testimony counsel asked Kelsey if she remembered how long it was after intercourse that she began to tell Gordon to stop and she didn't know in quotes how long it was the implication being that she did not say it immediately the prosecutor clarified on redirect asking her if she had told him she in quotes didn't want to have sex prior to intercourse and she said yes there you have a direct direct contrary evidence to what was on the tape right what counsel could have done and should have done is said isn't it true that in your interview that you had with detective Alaya on the night that it occurred that you did not you had said that you had sex for five minutes before you said to stop that's done that she said no I didn't say that I was saying and to the extent it was unclear that was all clarified that's the problem I think it was more clear than it was and and then I went and watched the video I was like well I'm not even sure she even said that but if she did she certainly clarified it she certainly you know the detective asked follow-up questions and clarified it right in those follow-up questions come in the form really of a cross-examination they're not the open-ended which was how the interview started it's only it's just it's only a minute later and in that would be about 20 seconds in this sort of fast-paced conversation we're having so it's really not it doesn't at least it doesn't strike me when I watch that video that you know that the detectives bad and clear detective is genuinely investigating at that point so now wait a minute did you are you saying that you had consensual sex for five minutes and she's like no no I was protesting the whole time and I just I'm not sure it would have been that helpful to you it's very hard for me to see how it's prejudicial I understand but she does not say that I know no I was doing it saying it the whole time until after the question is asked by the detective of so what you're saying is that you consented to the sex or I can't remember the exact phrasing and then she said perhaps getting picking up on a cue going no no no I said it all along but the judge did not have in front of him those statements apart okay so the question that was asked by the detective that where the answer was given that you were really relying on was how long did this sex last okay so she was answering that question and she says five minutes and I told him to stop you say that she said and then I told him to stop but and I told him to stop and so that she's answering the question of she was saying at that point she wasn't asking was it consensual she's saying how long was it and this this young woman was clearly kind of out of it in this interview it's obvious if you watch it and so then the minute or so minute and a half it's just hard for me to see how that's the silver bullet that you're saying it is well it's not it's one of 11 statements that were provided the probation the truancy the drug use the not getting along with the parents which is what trial counsel argued is the reason that she lied those other things are all part of it is not just one thing this is probably you know if you want to say the larger thing but it's not just one thing another example I'll give this real quick in trial she testifies that she is driven to the apartment she is then impeached although not effectively by trial counsel which allows her by using the preliminary examination to say well then you said that you walked for 45 minutes he kind of backs her out of it and excuses her by saying well you must have been under stress because you were getting cross-examined you were testifying it was a nervous situation etc and she goes yes yes that's why I didn't say it back then well had he listened to the first couple of lines of this video recording she says adamantly I walked to the apartment it took me 45 minutes to get there he could have impeached her with that statement which was closer in time and was not under this as she used ruse of not being able to tell the truth mr. Thompson but she was mr. Thomas let me jump in on that yeah I get the point that it's potentially impeachment I find her more to be a poor narrator of facts unless she's probed by counsel or the detective but even if I even if I give you the point that it's contradictory as judge Smith points out there's a lot of evidence in there that's contradictory that the court found her to be sometimes not credible and your response was it's still not cumulative at what point does it become cumulative if or you're saying it never becomes cumulative even though there's a hundred instances of hurt testifying contradictory well the the point the 11 statements that I'm talking about are not cumulative of the other matters that are brought in because they're not discussed during the testimony so they're not cumulative in that sense do they go to her overall credibility and therefore they're cumulative of the fact she doesn't have big credibility or are they more instances of the facts that that would have allowed the trial judge who heard the testimony made the decision to make the determination that she is not credible so she's not credible it's a consent defense and therefore those charges go out and a whole lot of sentence goes out of this case so your point is if there's 11 instances of of lack of credibility a 12th is going to change it or 13th or 14th at some point is there ever a time it becomes cumulative but the trier of fact should have the benefit of knowing all of the information the officer went through the time to take that take it down that it was it was recorded it was booked into evidence prosecutors should have turned it over trial counsel should have acquired it it was other sources of impeachment that would have added to not cumulatively but added to the fact that she was not a credible witness not a credible victim and therefore those charges would not have been so I think judge miss about ready to get you safe so your time but I do have a question just that I'd like to ask him before we go to the government because I want to know the government's got it I think I heard you say and I thought I remember this in your briefs that that that the kissing the petitioner and performing oral sex on petitioner were things that were in the interview but were not in the detective report and therefore but I thought that in the report that it does talk about how she wanted to kiss the petitioner and that she performed oral sex on petitioner so am I is it or is it not in the detectives report in other words what you have or is it only in the video I believe it's not in there I believe there's kissing on the cheek and then there may have been kissing but there wasn't the extent of the kissing and the back-and-forth and that she engaged in it she's the one that initiated it and then it moved from the kissing standing up or on the chair depending on which version you've got to kissing on to the bed in which the five minutes of sex to be clear that the kissing is in report but kind of consistent with a lot of stuff not the detail that was in the video it was your right and it may be alluded to but then again that's why you want to bring in no I hear you so I just want I'm more of a factual question then on the oral sex is that in the report or is it or is it only in the video I don't recall it as being in the report I will look when I sit down here we can ask the government's possible thank you very well you're over your time we're gonna give you a little bit of rebuttal after we hear you got one okay yeah all right miss Watson we need to there we go please proceed for the government good morning may it please the court Michelle Swanson for respondent appellee and as the court notes the Ed Pez standard of review applies to the Brady and ineffective assistance of counsel claims that we're discussing today and appellant contends that the videotape shows that the victim stated that she did not object to having sex with and I have also watched the videotape twice before this oral argument and listened very closely and took notes and nowhere on that videotape did she say that she did not object for over five minutes in fact she made it quite clear repeatedly to detective Elia that she objected from the outset at the time of penetration that she told petitioner she appellant that she did not want to have sex and that she yelled and pushed at him the entire time while appellant continued to have sex with her and so I don't see that statement anywhere on the videotape but let's assume that she had made that statement the state court found that and that that would not have made any difference to her credibility as the court notes defense counsel cross-examined her extensively about many of the inconsistencies in her statements regarding the rape and also cross-examined her about her intoxication and how that affected her ability to perceive throughout the rape so that was thoroughly explored and this assumed statement that she made that was she made quite clear later in her interview was not the case would have made no difference to her overall credibility and so can you give a specific record sites that in your judgment are the best evidence that evidence outside the video was cumulative on the issue of her consent to the sex what would you say well detective Elliot's report actually and faithfully memorializes the victim statement and a detective Elliot's report is in the appellate record at volume 3 of the excerpts of record at 552 to 553 and and to answer the question earlier about whether that report mentions the that the victim initiated kissing and that appellant took her clothes off and before the intercourse that's all memorialized in the report and so I would say that that is all right there and and there's no dispute in this case that defense counsel did receive that report and you believe that that evidence is cumulative of what would be found in the video I do your honor one thing that's not let me follow up now one thing that's that I don't quite agree is in there is that she doesn't mention that she told the defendant she did not want to have sex because she was a virgin she answered upon questioning that she at the interview that she was a virgin but she doesn't say I told the defendant that or objected because of that doesn't the failure to turn over the video deprive the defense of the opportunity to attack the already shaken credibility on that point I know it does not you know in both her video in both in both the statement that she gave detective Elliot and her trial testimony she was quite clear that she did object at the time of penetration and that she objected throughout the the course of the rape and so let's say that that they had introduced evidence that she had said that she had should not told detective Elliot that on the tape that she said she let me back up sorry say that that had been disclosed and they had used that to impeach her it would have made no difference because it was quite clear from both her statement to detect value and her trial testimony that at some point at penetration and thereafter it became non-consensual so that would have made no difference to the trial court's verdict in this case they wouldn't have assisted the defense counsel in impeaching her further again it's just cumulative I mean she was thoroughly impeached the trial court recognized that there were problems with her had lied in the past and that she was capable of lying but the trial court also found that appellant was completely unworthy of belief and the trial court also found very persuasive and all of the other evidence submitted in the case that corroborated the victim's testimony and that testimony consists of her behavior immediately after leaving appellant's apartment she was distraught she immediately disclosed the rape to her grandparents when they did not believe her she desperately opened the car door of a moving car stuck out her legs and tried to fly down a passing police officer when he saw her she was crying hysterically and she immediately disclosed the rape to him her behavior was entirely consistent with someone who had just been raped and second of all the sexual assault examination revealed that she had two abrasions to her hymen that was consistent with blunt force trauma and third appellants prior sexual assaults on the victim and his girlfriends was further evidence that the victim was telling the truth in this case and as I just noted you know the trial court found appellant completely unbelievable and specifically said that when appellant starts spinning quote spinning his tall tales unquote he is quote his own worst enemy on this record we would submit that the state court reasonably found that the failure to disclose the videotape did not result in any prejudice and was therefore not material counsel your your worthy opponent of course says this is a Brady violation and we've talked about the evidence considering all of this through the light of edpa can you comment on how you believe what's the strongest evidence that the counsel for mr. Gordon has to pierce if you will be edpa veil I don't I don't see how he can he can't he's he's arguing essentially that he just disagrees with the Superior Court's determination there was no prejudice and he offers alternative arguments and his views of how that evidence should be viewed but that's not the standard the standard isn't even whether the Superior Court was incorrect it's whether it was objectively unreasonable and appellant has not met that burden especially in the context of the ineffectiveness claim in which there's double deferential review under a path and I gather when you get to the IAC claim I assume that your position would be that you believe there was no Brady violation in terms of the third prong anyway so of course by definition there was no IAC claim at least with respect to the Brady allegation is that correct that's correct and this court has said that those two standards are equivalent that again counsel that you mean the that the Strickland standard and what other standard and the materiality standard under Brady so basically if we were to if we conclude that that basically if you decide this on prejudice on Brady then under Strickland's prejudice you would fail also is that right that's correct well would you even get there wouldn't you find that there had been no if you will failure to comply with the reasonable standard of attorney conduct if there was no violation found well the state the state court just went straight to the prejudice prong so that's why we're just discussing that today so counsel can I ask you sort of I think it's a similar question what judge Smith is asking you but maybe it is slightly different and that is it seems to me that that Gordon's counsel is arguing in response to the cumulative he's basically saying I'm sure I don't put words in his mouth by any he's saying that he's disputing that it's cumulative because this is so important I know in other words it's hard to argue that a lot of the stuff that is in the video wasn't in the report and therefore sort of cumulative but at some point you could imagine that that something would be cumulative in a sense that the evidence would be the same about the same thing as as what there was already evidence in the record but this evidence was just so even though it's cumulative it's just so much better I think that's what you're what Gordon's counsel saying is this this one this is so much better and so much more useful than the other evidence that they had that it makes a difference and I don't think I'm trying to think of how does that work in the cumulative analysis is it just that if it's cumulative you're done and I already it's a really really hard showing or does the strength that the evidence matter I'm not necessarily saying it it is strong of it it is stronger I'm not necessarily agreeing or disagreeing with that but I'm just saying I'm trying to get an idea of how we should look at his argument that his response to our concern that it might be cumulative well in terms of the victim's credibility and you know that is the standard in terms of was her credibility impeached by other other inconsistent statements and was the trial court aware of this and yes I would say absolutely he the defense counsel and impeached her repeatedly with many inconsistent statements and again also highlighted that's what it did he mention the kissing because it sounds like the kissing was in in the report that they have and so did the defense counsel try to use the initiation of kissing as to impeach I don't remember that specific question but what his tactic was was he he he he concentrated on when she later objected during the rape and he questioned her extensively about how drunk she was and got her to admit that she was kind of going in and out of consciousness and was fuzzy and got her to admit yeah maybe I don't quite remember what was said or when I said it and he chose to do that tactic in fact the prosecutor realized and recognized what he was doing and during officer Davis's testimony and the prosecutor specifically mentioned and I'm sorry apologize I don't have that specific citation in front of me that actually said that he recognized that that's what defense counsel was trying to do that he was trying to make it appear and that the victim had only objected after intercourse had been going on for quite some time and that's why he wanted to offer officer Davis's testimony and to rehabilitate her which trial court allowed and so that and then my other point would be that your point is that the argument was was the focus was by defense counsel was more that not so much that she had initiated everything but or maybe you're not sure about that but you do recall that that focus was on the fact that she didn't object for until well into it. That's correct and again as I said previously and there's no dispute there was no disputing that she objected at some point and that appellant continued having sex with her and so it is clear that it came out non-consensual at some point and so whatever had happened before they even started sex really would have made no difference whatsoever. Can I ask you about that does it in a sense if he had a if she had objected I'm not I don't necessarily see it in record but if she if she had if it was more clear and a jury could conclude that she had not objected until five minutes in does that does that make a difference in a sense of him being able to be convicted? No because she she testified she did object clearly she said she's yelled at him to get off of her she pushed him and he continued having sex with her. She testified to that at the trial? Yes that's correct. Can I follow up on their dovetail off of what Judge Van Dyke was mentioning earlier in this question that was you know the value of this video we've got a 45 minute video of the victim on the night in question fresh and video obviously has a better trial presence than cross-exam and backing off to the maybe the 30,000 foot level defense counsel you know is always concerned that when a court suppresses or or rules if we do that this was okay we're sort of empowering the police or empowering the government to withhold evidence in a sense rewarding them here by affirming a conviction despite the fact that it didn't turn over this right-on point victim that night address that concern from a global standpoint aren't we rewarding the government for withholding evidence that arguably was relevant? Well first of all I would like to note that the prosecutor made clear during the hearing on this claim in the Superior Court that the trial court had made no finding that the prosecution did not actually turn the videotape over and the trial court agreed that he had not actually made that finding they were going to go ahead and assume that for the sake of argument I just want to make that clear. Second of all the prosecution did turn over the police report of Detective Elia and in her report she specifically notes that the interview was recorded and she specifically notes where the DVD was made a follow-up Brady request and requested several DVDs and not this one in particular but another one of a videotaped interview of the victim that she did later when her mother was with her and during the the in lemonade discussion about the Brady material defense counsel mentioned that he had received most of the DVDs except two were great it's unclear from that whether he received it or not but I just wanted to note those things in the record because this is not a case where prosecution was you know trying to hide it that they did hide it I mean they put it out there that it was there maybe it wasn't turned over I think that was probably just an oversight by the prosecutor and defense counsel but I think in this case this is not one of those where there was some kind of deception by let me be sure I understood you correctly did you say that this video along with others was listed among the evidence available that defense counsel asked for some videos but not this one is that correct that's correct so basically so basically from a Brady perspective it was not hidden to the degree that it was listed among the evidence available it just wasn't requested is that right that's correct okay why isn't that an IAD claim then I see I'm sorry well we did in that and that is part of what we have addressed here today that the fact that counsel didn't seek that DVD and that the fact that it wasn't introduced was that ineffectiveness and again for the same reasons the state court found that even if counsel had requested it and entered it into evidence it would have made no credibility or to the verdict so the prejudice thing this is where the prejudice inquiry would would basically be the same whether you whether you get to it and I ask you what so could be a video have been used by the prosecution if they had wanted to like could they probably I mean I realize it would have been a problem that the prosecution had not turned it over and tried to use it that would have that might have been a problem but if the video had been turned over and defense counsel I looked at the entire video and said wow this is on balance this is not helpful so I'm not going to use it but could prosecution or is prosecution need to use her as a witness if she's available and not the video that's correct only if they had been able to use that to impeach her or else to write rehabilitate her so the prosecution would have been barred from using just just saying we want to play that play this as evidence because we think it's helpful to right right they have to use the victim's testimony in that case because a confrontation clause and yes I I guess I don't know he's got me off guard with that no I mean because again it's just not super clear to me that that this video actually helps the defendant right it seems to me like on balance this video I mean the only way I think it helped defendants if you just were able to clip out those little little statements what I would consider out of context so seems to me that you know I wasn't ever a prosecutor but it seems to me that that I might want to actually play this video as a prosecutor but I don't know if the prosecutor could have well and then I mean you know if if defense counsel hadn't had this video and they tried to whatever portion they believe that the victim said she didn't she didn't object for five minutes and they would have just tried to play that little bit of course the prosecutor could have then entered the rest of the and show that in fact she made herself made it quite clear that that she did object strenuously from the outset of sex so yeah they could have used it in that case unless there are any more questions I'm prepared to submit the matter very well other colleague have additional questions of Miss Swanson all right Mr. Thompson we're gonna give you a couple of minutes for rebuttal and I'd like you to start off by addressing the point made by Miss Swanson that this video was actually listed among the evidence available it just wasn't sought by the defense would you address that please yes your honor it's in the report says the interview was recorded on a DVD and later booked into Napa PD evidence de 12 and counsel did not request it so that's the IEC part but regardless but it was there it was in the sense that it was listed among the evidence available yes but it was not the interview itself was not turned over well yeah it was there we could ask for it we have but well he did ask for a gen with a general discovery letter and he did include a site to Brady so in that sense you he would have turned over but you don't have to request Brady that's not a requirement Brady is do they're supposed to turn it over that that's the rule of Brady not you don't have to request it so that part kind of pushes out in any event counsel when the state got his declaration never mentions of having that the video and never mentions requesting the video and the state got his declaration not defense comes but your objection there is the IAC might basically do it the evidence was there prosecution listed it the council didn't ask for it right well it's both but it was there it was listed duty to turn it over defense counsel I had a duty to see this line and ask for so it's prejudice on both sides council was in a defect a deficient and it should have been asked for so going back to the statement about the kissing and the oral copulation your honor I think I misdirected myself during the argument that part is in the statement about the kissing the moving to the bed and the out was this is the full extent of JD one statement about kissing Gordon on the lips and what is set out in the tape was not used to impeach her during trial in trial she testified only that she kissed Gordon on the cheek so the question I asked the question that I asked the government's lawyer whether or not that was used your answer is it wasn't there was no the defense counsel never never said talked about kissing with her as I recall you and I was looking through the interesting thing about like is I mean he knew about the kissing from the report so I guess you're saying but if he had known the full extent of it he'd been more likely it's not clear to me that he would have gone that route it's not it's because it doesn't at the end of the day even if she initiated kissing and did these things a jury could conclude that you know this young woman that she started this stuff but then what didn't want to do it and and you know you ended up where you were but that's more ineffectiveness by counsel by not even asking these questions based upon what was my point is that the council may have made a strategic decision not to not to bring up her kissing because thinking that that doesn't help his his client that's not in the declaration of the council provided the state and we were not given an evidentiary hearing on this point so at a minimum we should have an evidentiary hearing to discuss these matters and to make a determination as to these matters so that we can go forward and we can know what what happened those are not in well as I recall okay make it I understand as I recall I remember going through the the transcript of the hearing that was in front of the state court judge I think on on on this issue and I actually think kissing and oral sex and those things were talked about in the fact that they were in the report and I think some of this was talked about at that here well in the habeas record or in the habeas record is different because the court did not when it denied the Brady claim he denied it in tentative findings it later then adopted those tentative findings as final findings but it was in between the tentative findings and the final findings that we finally got the request in post conviction the court never considered that in making its determination on the habeas issue so you either of my question I'm sorry do you have an extra I don't know it makes any difference but are you saying so the part of the record I'm reading one one you know er 111 etc that area that hearing that the district court judge had not actually had the the district court judge had not looked at or the habeas judge had not looked at the state habeas judge had not looked at the video yet well he did not consider it he made the tentative findings he did not change the tentative findings at all and the in the discovery of me I'm confused because I know in that hearing with the one I'm looking at there's discussion about the video so he certainly considered it I don't know but it's fine I don't want it I don't want to belabor okay well then just the last point is I look the statement early on about the then it's five minutes then I told him he had to stop now she's mumbling at that time maybe it's and instead of then but I'm I heard then then I asked him to stop but that's a 1005 in the in the actual we will end on that happy note and we thank both counsel for their arguments very helpful to us so we appreciated the case of Gordon versus Lisa Raga is submitted and the court stands adjourned thank you counsel thank you thank you thank you this session stands adjourned
judges: M. Smith, Vandyke, Gordon